WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

MARICOPA COUNTY, a political subdivision of the State of Arizona,

Plaintiff,

vs.

OFFICE DEPOT, INC., a Delaware corporation,

Defendant.

No. 2:14-cv-1372-HRH

O R D E R

Motion to Dismiss

Defendant moves to dismiss[1] plaintiff's complaint. This motion is opposed.[2] Oral argument was requested and has been heard.

Background

Plaintiff is Maricopa County. Defendant is Office Depot, Inc.

This case involves plaintiff's purchase of office supplies from defendant via the U.S. Communities program. "U.S. Communities Government Purchasing Alliance ... is a

[1]Docket No. 10.

[2]Docket No. 18.

nonprofit organization designed to assist government agencies and educational institutions in making purchases of products and services."[3] "U. S. Communities ... sponsors a variety of procurement contracts, known as 'master contracts', by which state and local public agencies and entities may purchase goods and services."[4] "U.S. Communities selects 'lead' public agencies to competitively solicit and enter into master contracts with various suppliers[.]"[5] Other public agencies, known as "participating public agencies", can then "piggyback" on the master contracts and "mak[e] purchases based on the relevant terms, conditions and pricing of the master contract."[6]

The County of Los Angeles "acted as a lead public agency" and entered into two Master Agreements with defendant, one in 2001 and one in 2006,[7] referred to herein collectively as the Master Agreement.[8] The Master Agreement defines the County of Los

[3]Complaint at 2, ¶ 6, attached to Notice of Removal, Docket No. 1.

[4]Id. at ¶ 7.

[5]Id. at ¶ 8.

[6]Id. at ¶ 9.

[7]Id. at 3, ¶ 13.

[8]The parties agree that the relevant terms and conditions of the 2001 and 2006 Master Agreement are not materially different and thus all citations herein are to the 2006 Master Agreement.

Angeles as the "COUNTY" and Office Depot as the "VENDOR."[9] The Master Agreement contained a "Most Favored Public Entity" clause (Section 23) which provided that

> VENDOR represents that the price charged to COUNTY in this Agreement do not exceed existing selling prices to other customers for the same or substantially similar items or services for comparable quantities under similar terms and conditions.
>
> If VENDOR's prices decline, or should VENDOR, at any time during the term of this Master Agreement, provide the same goods or services under similar quantity and delivery conditions to the State of California or any county, municipality or district of the State at prices below those set forth in the Master Agreement, then such lower prices shall be immediately extended to COUNTY. [[10]]

The Master Agreement also contained a piggybacking clause (Section 36), which provided:

> The COUNTY has designated U.S. Communities Purchasing and Finance Agency ... as the agency to provide administrative services related to purchases by other governmental entities (Participating Public Agencies) under this Agreement. At COUNTY's sole discretion and option, and upon VENDOR entering into the requisite U.S. Communities Administration Agreement, Participating Public Agencies may acquire items

---

[9]2006 Master Agreement at iii, § 1.0, Exhibit 2, Complaint, attached to Notice of Removal, Docket No. 1.

[10]Id. at 12, § 23.

> listed in this Agreement. Such acquisition(s) shall be at prices stated in this Agreement, or lower.[[11]]

The Master Agreement incorporated by reference Exhibits B and C to the agreement, which were Los Angeles County's Request for Proposal (RFP) and defendant's response to the RFP.[12] The RFP included the terms and conditions that would apply to all awards from the RFP. One such term was a "Most Favored Customer" clause which provided that "Vendor represents that the prices charged County in this Purchase Order do not exceed existing selling prices to other customers for the same or substantially similar items or services for comparable quantities under similar terms and conditions."[13] The RFP also required that the

> proposer agrees, for the period any agreement formulated from this inquiry, that discounts quoted from price lists are minimum and that prices proposed for core list items are firm through March 4, 2007 except paper.... If prices decline or should vendor at any time during the life of said agreement sell the same materials or service under similar quantity and delivery conditions to the State of California, or any county, municipality or legal district of the State of California at prices below those quoted herein, such lower prices shall be immediately extended to the County of Los Angeles.[[14]]

---

[11]Id. at 16, § 36.

[12]Id. at iii, § 1.1.

[13]RFP at 7, ¶ 22, Exhibit 3, Complaint, attached to Notice of Removal, Docket No. 1.

[14]Id. at 19, ¶ 16.

One of the attachments to the RFP was an explanation of the commitments that a supplier which enters into an Administration Agreement with U.S. Communities must make. One of those commitments was the "Pricing Commitment", which provided that the

> supplier's U.S. Communities pricing is the lowest available pricing (net to buyer) to state and local public agencies nationwide and a further commitment that, if a state or local public agency is otherwise eligible for lower pricing through a federal, state, regional or local contract, the supplier will match the pricing under U.S. Communities.[[15]]

Defendant and U.S. Communities entered into an Administration Agreement,[16] the primary purpose of which was "to make available the Master Agreement to Participating Public Agencies on a national basis[.]"[17] Plaintiff piggybacked on the Master Agreement, and "[f]rom 2006 through 2010 [plaintiff's] expenditures to [defendant] for office products under the 2006 Master Agreement totaled approximately $22.5 million."[18]

Plaintiff alleges that defendant represented that U.S. Communities' members, such as plaintiff, would receive defendant's best governmental pricing but that defendant failed

---

[15]Attachment H at 2, RFP, Exhibit 3, Complaint, attached to Notice of Removal, Docket No. 1.

[16]Complaint at 5, ¶ 21, attached to Notice of Removal, Docket No. 1.

[17]Administration Agreement at 1, Exhibit A, Declaration of Juli Ann Lund [etc.], which is appended to Motion to Dismiss [etc.], Docket No. 10.

[18]Complaint at 9, ¶ 40, attached to Notice of Removal, Docket No. 1.

to provide the best pricing. Specifically, plaintiff alleges that defendant offered lower prices to the City and County of San Francisco and to the City of Berkeley.[19] Plaintiff also alleges that defendant raised its prices even though it "knew its price changes were not in compliance with the contract...."[20] Plaintiff further alleges that defendant overstated and misrepresented its costs in order to charge higher prices, discontinued items with set prices so it could substitute higher priced items, and manipulated the cost of some items in order to artificially increase the payments that would be made to defendant.[21]

Plaintiff commenced this action on May 1, 2014 in state court. On June 19, 2014, defendant removed the action to this court on the basis of diversity jurisdiction. In its complaint, plaintiff asserts five claims against defendant, three fraud claims and two contract claims.

Plaintiff's breach of contract claims are found in Count II of plaintiff's complaint. Plaintiff alleges that it had a "direct contractual relationship" with defendant and that defendant "promised [plaintiff] ... that it would receive the lowest prices offered to any state or local governmental entities in the United States for goods it purchased from"

---

[19]Id. at 9-10, ¶¶ 44-45.

[20]Id. at 11, ¶ 58.

[21]Id. at 12, ¶ 59.

defendant.[22] Plaintiff alleges that defendant breached this promise because it "failed to provide [plaintiff] with the lowest prices it offered to any state or local governmental entities...."[23] In Count V, plaintiff asserts a second contract-based claim, alleging that defendant's conduct violated the covenant of good faith and fair dealing that is implied in every contract.[24]

Plaintiff's fraud claims include a statutory fraud claim in Count I, a common law fraud and deceit claim in Count III, and a negligent misrepresentation claim in Count IV. All three of these claims are based on allegations that defendant "misrepresented to [plaintiff], among other things that the prices it charged ... for office supplies were the lowest it charged to any other state and local governmental entity in the United States."[25] Plaintiff further alleges that defendant "misrepresented ... that the prices being charged by [defendant] to [plaintiff] were approved as provided by the contract, when such prices in fact had not been so approved."[26] And plaintiff alleges that defendant withheld "the fact

---

[22]Id. at 13, ¶¶ 73-74.

[23]Id. at ¶ 75.

[24]Id. at 16, ¶¶ 95-96.

[25]Id. at 12, ¶ 64.

[26]Id. at ¶ 65.

that it was charging lower prices to other state and local governmental entities in the United States for similar types and amounts of merchandise as it was selling to" plaintiff.[27]

Pursuant to Rules 9(b) and 12(b)(6), Federal Rules of Civil Procedure, defendant now moves to dismiss all of plaintiff's claims.

Discussion

"Rule 12(b)(6) authorizes courts to dismiss a complaint for 'failure to state a claim upon which relief can be granted.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Fed. R. Civ. P. 12(b)(6)). "To avoid dismissal, the complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "'[A] plaintiff must 'allege sufficient factual matter ... to state a claim to relief that is plausible on its face.'" OSU Student Alliance v. Ray, 699 F.3d 1053, 1061 (9th Cir. 2012) (quoting Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 721 (9th Cir. 2011)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012). "Rule 9(b) provides that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" United States ex rel. Cafasso v. General

[27] Id. at 13, ¶ 66.

Dynamics C4 Systems, Inc., 637 F.3d 1047, 1054-55 (9th Cir. 2011) (quoting Fed. R. Civ. P. 9(b)). "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,'" as well as "'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" Id. at 1055 (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

Defendant first argues that plaintiff's breach of contract claims in Count II are barred by the statute of limitations, except for the period of August 23, 2009 through November 30, 2009. In Arizona, a claim for breach of a sales contract is subject to a four-year statute of limitations. A.R.S. § 47-2725. Plaintiff's damages are based on an audit performed by its Internal Audit Department.[28] The Audit Department's "analysis was limited to the period when the San Francisco contract and the [Master] Agreement ran concurrently (January 2006 through November 2009)...."[29] Thus, defendant argues that plaintiff does not have any damages after November 30, 2009 and that it had to file its complaint within four years of that day, or by November 30, 2013. Plaintiff did not file its complaint until May 1, 2014. But, the parties entered into a tolling agreement that provided that "[t]he period commencing on August 23, 2013 and ending on April 30, 2014, inclusive ... shall not be

[28]Complaint at 11, ¶ 54, attached to Notice of Removal, Docket No. 1.

[29]Audit of Office Depot Contract (Master Agreement 42595) at 6, Exhibit B, Lund Declaration, which is appended to Motion to Dismiss [etc.], Docket No. 10.

included in computing the running of any statute of limitations...."[30] Thus, defendant argues that plaintiff's breach of contract claims for August 23, 2009 through November 30, 2009 are not barred, but that plaintiff's claims for breach of contract are otherwise barred by the statute of limitations.

The state and any political subdivisions thereof are "exempt from the statute of limitations under the common law rule of nullum tempus occurrit regi ('time does not run against the king'), which is codified in A.R.S. § 12-510." In re Diamond Benefits Life Ins. Co., 907 P.2d 63, 65 (Ariz. 1995). A.R.S. § 12-510 provides that "[e]xcept as provided in § 12-529, the state shall not be barred by the limitations of actions prescribed in this chapter." Thus, plaintiff argues that it is exempt from the statute of limitations.

Defendant argues that plaintiff's reliance on A.R.S. § 12-510 is misplaced. Section 12-510 makes clear that the exemption for political subdivisions only "applies to limitations periods set forth in Chapter 5 of Title 12[.]" Aspen Creek Builders, Inc. v. Mundell ex rel. Ariz. Registrar of Contractors, Case No. 1 CA–CV 10–0903, 2011 WL 6810924, at *3 (Ariz. Ct. App. Dec. 27, 2011). Because the limitations period for contract actions relating to the sales of goods is not found in Chapter 5 of Title 12, but rather in Chapter 2 of Title 47, defendant argues that A.R.S. § 12-510 has no application here.

---

[30]Tolling Agreement at 1, ¶ 2, Exhibit C, Lund Declaration, which is appended to Motion to Dismiss [etc.], Docket No. 10.

Defendant has, however, overlooked A.R.S. § 12-544, which is foundin Chapter 5 of Section 12. Section 12-544(4) provides that "[t]here shall be commenced and prosecuted within four years after the cause of action accrues, and not afterward" actions "arising under the provisions of title 47, chapter 2, for breach of any contract of sale, which action shall be governed by § 47-2725, notwithstanding any other provision of this section or of § 12-543 or 12-548." In other words, section 12-544(4) incorporates the UCC statute of limitations for breach of a sales contract into Chapter 5 of Title 12. Because the UCC statute of limitations for breach of a sales contract can be found in Chapter 5 of Title 12, A.R.S. § 12-510 does apply here. And, pursuant to A.R.S. § 12-510, plaintiff is exempt from the statute of limitations.

Defendant next argues that plaintiff's contract claims are not plausible because plaintiff was not an intended beneficiary of the contract terms which it alleges defendant breached. Although plaintiff alleges that it had a direct contractual relationship with defendant, plaintiff has not cited to any contract to which both it and defendant were parties. Plaintiff is not a party to the Master Agreement and plaintiff was not a party to any of the other agreements attached to the RFP or defendant's response to the RFP. "Under Arizona law, a person who is not a party to a contract can recover under that contract only if he is a primary beneficiary under the terms of the contract[.]" Nahom v. Blue Cross and Blue Shield of Ariz., Inc., 885 P.2d 1113, 1117 (Ariz. Ct. App. 1994). In order to assert

contract claims against defendant, plaintiff has to show that it is at least plausible that it was a third-party beneficiary of a contract to which defendant was a party.

"Determining whether a third party is a direct beneficiary of the contract or merely an incidental beneficiary requires construing that contract." Id. at 1118. "[T]he interpretation of a contract is a question of law[.]" Grosvenor Holdings, L.C. v. Figueroa, 218 P.3d 1045, 1050 (Ariz. Ct. App. 2009). "The purpose of contract interpretation is to determine the parties' intent and enforce that intent." Id. "'Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto.'" Id. (quoting Mining Inv. Group, L.L.C. v. Roberts, 177 P.3d 1207, 1211 (Ariz. Ct. App. 2008)).

"[A] third-party beneficiary exists only when the contracting parties intended 'to directly benefit that person' and the contracting parties must 'indicate that intention in the contract itself.'" Armbruster v. WageWorks, Inc., 953 F. Supp. 2d 1072, 1076 (D. Ariz. 2013) (quoting Sherman v. First American Title Ins. Co., 38 P.3d 1229, 1232 (Ariz. Ct. App. 2002)).

> Not only must the benefit be intentional and direct but the third person must be the real promisee. The promise must be made to him in fact although not in form and it is not enough that the contract may operate to his benefit but it must appear that the parties intended to recognize him as the primary party in interest and as privy to the promise.

Basurto v. Utah Const. & Min. Co., 485 P.2d 859, 863 (Ariz. Ct. App. 1971) (footnote omitted).

Plaintiff's contract claims are based on an allegation that defendant was contractually obligated to provide "its best government pricing, without qualification" to plaintiff.[31] Defendant contends that plaintiff's claim to this contractual right to the best government pricing is based principally on two sources, Section 23 of the Master Agreement which is the "Most Favored Public Entity" clause, and the Pricing Commitment that was contained in the U.S. Communities document that was attached to the RFP.[32] But, defendant argues that plaintiff was not an intended beneficiary of Section 23 and that the RFP and its responses thereto do not create any contractual obligations which plaintiff can enforce.

The court agrees with defendant that plaintiff was not an intended beneficiary of Section 23 of the Master Agreement, which provided:

> VENDOR represents that the prices charged to COUNTY in this Agreement do not exceed existing selling prices to other customers for the same or substantially similar items or services for comparable quantities under similar terms and conditions.
>
> If VENDOR's prices decline, or should VENDOR, at any time during the term of this Master Agreement, provide the same goods or services under similar quantity and delivery conditions to the State of California or any county, municipality or district of the State at prices below those set forth in the Master

---

[31]Complaint at 8, ¶ 36, attached to Notice of Removal, Docket No. 1.

[32]Plaintiff also relies on the "Price Guarantee" clause in the award letter for the 2006 Master Agreement and on two provisions from the RFP, a price guarantee provision and a "most favored customer" provision.

> Agreement, then such lower prices shall be immediately extended to COUNTY.[[33]]

By its very terms, Section 23 of the Master Agreement applies only to Los Angeles County and not to any piggybacking agency because Section 23 only refers to the "COUNTY."[34] Nothing in Section 23 indicates that the parties intended its terms to apply to participating public agencies. And, nothing in Section 36 of the Master Agreement indicates that the parties to the contract intended to give participating public agencies the right to enforce the Master Agreement. Section 36 provided, in pertinent part, that "Participating Public Agencies may acquire items listed in the Agreement. Such acquisition(s) shall be at the prices stated in this Agreement, or lower."[35] All Section 36 does is give participating public agencies the right to purchase office supplies at the same rates defendant provided to Los Angeles County. Because plaintiff was not an intended beneficiary of Section 23 of the Master Agreement, plaintiff's breach of contract claims that are based on defendant's alleged breach of the Master Agreement are dismissed.

---

[33]2006 Master Agreement at 12, ¶ 23, Exhibit 2, Complaint, attached to Notice of Removal, Docket No. 1.

[34]The same would be true of plaintiff's reliance on the "Price Guarantee" provision in the award letter and the two provisions in the RFP. These provisions only apply to Los Angeles County and do not extend any rights to participating public agencies such as plaintiff.

[35]2006 Master Agreement at 16, § 36, Exhibit 2, Complaint, attached to Notice of Removal, Docket No. 1.

Defendant next argues that plaintiff has no right to enforce the Pricing Commitment that is part of the U.S. Communities program. The Pricing Commitment was a supplier's

> commitment that supplier's U.S. Communities pricing is the lowest available pricing (net to buyer) to state and local public agencies nationwide and a further commitment that, if a state or local public agency is otherwise eligible for lower pricing through a federal, state, regional or local contract, the supplier will match the pricing under U.S. Communities.[[36]]

Defendant contends that the Pricing Commitment can only be found in the Administration Agreement and that neither plaintiff nor Los Angeles County are parties to the Administration Agreement. Rather, defendant and U.S. Communities are the only parties to the Administration Agreement, and defendant argues that they are the only intended beneficiaries of that agreement and that a participating public agency, such as plaintiff, had no right to enforce any of the terms and conditions in the Administration Agreement.

This argument by defendant fails. Defendant and U.S. Communities were not the only intended beneficiaries of the Administration Agreement. Participating public agencies such as plaintiff were third-party beneficiaries of the Administration Agreement. Defendant and U.S. Communities entered into the Administration Agreement because they "desire[d] ... to make available the Master Agreement to Participating Public Agencies on

---

[36]Attachment H at 1, RFP, Exhibit 3, Complaint, attached to Notice of Removal, Docket No. 1.

a national basis[.]"[37] The language indicates that the primary purpose of the Administration Agreement was to allow defendant to sell office goods to other public agencies besides Los Angeles County at the prices it had negotiated with Los Angeles County. In other words, the Administration Agreement was entered into for the benefit of participating public agencies. One of the terms of the Administration Agreement was the Pricing Commitment. This Commitment had to be for the benefit of the participating public agencies as they were the entities which would be purchasing office supplies as a result of defendant and U.S. Communities entering into the Administration Agreement. The only possible beneficiaries of the Pricing Commitment term were participating public agencies. Whether this term was incorporated into the Master Agreement is irrelevant. The Pricing Commitment was a term of the Administration Agreement, defendant was a party to that Agreement, and plaintiff was an intended third-party beneficiary of that Agreement and that term. Thus, plaintiff has stated a plausible breach of contract claim based on defendant's alleged breach of the Pricing Commitment in the Administration Agreement.

Defendants next argue that plaintiff's breach of the implied covenant of good faith claim should be dismissed because plaintiff's breach of contract claims fail. But, plaintiff's breach of the implied covenant of good faith claim survives defendant's motion to dismiss because at least some of plaintiff's breach of contract claims survive.

---

[37] Attachment G at 1, Defendant's Response, Exhibit 4, Complaint, attached to Notice of Removal, Docket No. 1.

Turning then to plaintiff's fraud claims, defendant first argues that plaintiff has failed to plead its fraud claims with particularity. Defendant argues that plaintiff has not pled a single misrepresentation that was made by defendant to plaintiff. Rather, plaintiff alleges that it was "aware of the terms of the 2006 Master Agreement" and that the RFP "was supplied" to it.[38] But defendant argues that nowhere in its complaint does plaintiff allege that defendant made any representations directly to plaintiff. Plaintiff alleges that defendant "represented that U.S. Communities' members would receive [defendant's] best governmental pricing, without qualification" and attaches "several documents that are representative of [defendant's] marketing of the 2006 Master Agreement" to its complaint.[39] But, defendant argues that plaintiff has not alleged that it ever received any of these "marketing" materials. In short, defendant argues that plaintiff has failed to plead who at Office Depot made what representations to whom at Maricopa County, when such representations were made, or how or where they were conveyed.

Contrary to plaintiff's contention, plaintiff was required to plead its claim for negligent misrepresentation with particularity. See Taylor v. Nair, Case No. CV–13–01982–PHX–DGC, 2014 WL 2639656, at *2 (D. Ariz. June 13, 2014) (quoting Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003)) ("'It is well

---

[38]Complaint at 8, ¶¶ 37-38, attached to Notice of Removal, Docket No. 1.

[39]Id. at ¶ 35 and Exhibit 5.

established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements'"). Also contrary to plaintiff's contention, there is not "less particularity" required for an Arizona Consumer Fraud Act claim. Plaintiff was required to plead its fraud claims with particularity which means pleading the who, what, when, where and how of the alleged fraud, which plaintiff has failed to do. Plaintiff makes only vague allegations that defendant marketed the Master Agreement as having the lowest government pricing. But, plaintiff does not allege specifically when these representations were made, who at defendant made these representations, or that anyone working for plaintiff actually heard or read these representations. Plaintiff's fraud claims have not been pled with particularity, and they are dismissed.

Plaintiff requests leave to amend its fraud claims, but amendment would be futile as to plaintiff's common law fraud claims because those claims are barred by the economic loss rule. "The economic loss doctrine prohibits certain tort actions seeking 'pecuniary damage[s] not arising from injury to the plaintiff's person or from physical harm to property.'" Sullivan v. Pulte Home Corp., 306 P.3d 1, 2 (Ariz. 2013) (quoting Restatement (Third) of Torts: Liability for Economic Harm § 2 (Tentative Draft No. 1, 2012)). "'Economic loss,' ... refers to pecuniary or commercial damage, including any decreased value or repair costs for a product or property that is itself the subject of a contract between the plaintiff and defendant, and consequential damages such as lost profits." Flagstaff Affordable

Housing Ltd. Partnership v. Design Alliance, Inc., 223 P.3d 664, 667 (Ariz. 2010). The economic loss rule limits a party to its "contractual remedies for purely economic loss" arising from the other party's "alleged failure to adequately perform its promises under" a contract. Cook v. Orkin Exterminating Co., 258 P.3d 149, 153 (Ariz. Ct. App. 2011). Because plaintiff's common law fraud claims are based on the same alleged conduct as its contract claims, these claims are barred by the economic loss rule.

Amendment would also be futile as to plaintiff's statutory fraud claim. "[A] misrepresentation of law or of the legal effect of a contract does not constitute actionable fraud." Barnes v. Lopez, 544 P.2d 694, 697 (Ariz. Ct. App. 1976). Plaintiff's statutory fraud claim is based on allegations that defendant represented that its contracts guaranteed that plaintiff would be charged the lowest governmental pricing for office supplies. These are representations as to the meaning of the contract, not representations of fact.

## Conclusion

Based on the foregoing, defendant's motion to dismiss[40] is granted in part and denied in part. Plaintiff's contract claims that are based on allegations that defendant breached the Master Agreement are dismissed and plaintiff's fraud claims are dismissed. The motion is otherwise denied. Plaintiff's contract claims are not barred by the statute of limitations and plaintiff has stated plausible contract claims based on allegations that

[40]Docket No. 10.

defendant breached the Administration Agreement. Plaintiff is not given leave to amend any of the dismissed claims as amendment would be futile.

DATED at Anchorage, Alaska, this 21st day of November, 2014.

/s/ H. Russel Holland
United States District Judge