WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


MARICOPA COUNTY, a political subdivision )
of the State of Arizona,                 )
                                         )
                                         )
                            Plaintiff,   )
                                         )
            vs.                          )
                                         )
OFFICE DEPOT, INC., a Delaware           )
corporation,                             )
                                         )          No. 2:14-cv-1372-HRH
                            Defendant.   )
_____)


<u>O R D E R</u>

<u>Motion for Attorneys' Fees and Non-Taxable Expenses</u>

Defendant moves for an award of attorneys' fees and non-taxable expenses.[1]  This

motion is opposed.[2]  Oral argument was requested but is not deemed necessary.

<u>Background</u>

This case involves plaintiff Maricopa County's purchase of office supplies from

defendant Office Depot Inc. via the U.S. Communities program.  U.S. Communities is a

cooperative purchasing organization for government and non-profit entities.  Certain U.S.

_____

[1]Docket No. 112.

[2]Docket No. 126.

Communities' members serve as "lead agencies" which bid out supplier contracts that allow other U.S. Communities members to "piggyback" on the contracts, meaning that they can purchase goods from the supplier at the prices in the lead agency's contract.

Plaintiff piggybacked on a Master Agreement that was between defendant and Los Angeles County. As the supplier under the Master Agreement, defendant also entered into an Administration Agreement with U.S. Communities.

Plaintiff commenced this action on May 1, 2014 in state court, which was subsequently removed to this court on the basis of diversity jurisdiction. In its complaint, plaintiff asserted five claims against defendant, three fraud claims (statutory fraud, common law fraud and deceit, and negligent misrepresentation) and two contract claims. Plaintiff sought "no less than $6.75 million in damages...."[3]

Plaintiff's breach of contract claims were based on allegations that defendant "promised [plaintiff] ... that it would receive the lowest prices offered to any state or local governmental entities in the United States for goods it purchased from" defendant[4] but that defendant "failed to provide [plaintiff] with the lowest prices it offered to any state or local governmental entities...."[5] Plaintiff's fraud claims were based on allegations that defendant had "misrepresented to [plaintiff], among other things, that the prices it charged ... for office

---

[3]Complaint at 2, ¶ 5, Exhibit A, Notice of Removal, Docket No. 1.

[4]Id. at 13, ¶ 73.

[5]Id. at ¶ 75.

supplies were the lowest it charged to any other state and local governmental entity in the United States."[6]

Defendant moved to dismiss[7] all of plaintiff's claims. The court granted defendant's motion in part and denied it in part.[8] The court dismissed plaintiff's contracts claims that were based on allegations that defendant breached the Master Agreement, and the court dismissed plaintiff's fraud claims.[9] Plaintiff's contract claims which were based on allegations that defendant breached the Pricing Commitment in the Administration Agreement survived the motion to dismiss.[10] The court concluded that plaintiff was an intended third-party beneficiary of the Administration Agreement with a right to enforce the Pricing Commitment.[11]

After fact discovery was complete, the parties cross-moved for summary judgment on whether defendant had breached the Administration Agreement. In the cross-motions, the parties advanced different interpretations of the Pricing Commitment. The court found that plaintiff's proposed interpretation was not supported by the extrinsic evidence. The court

---

[6]Id. at 12, ¶ 64.

[7]Docket No. 10.

[8]Order re Motion to Dismiss at 19, Docket No. 24.

[9]Id.

[10]Id. at 19-20.

[11]Id. at 16.

concluded that defendant had not breached the Administration Agreement and thus granted defendant's motion for summary judgment and denied plaintiff's partial motion for summary judgment.[12] Judgment was entered on December 1, 2016, dismissing plaintiff's complaint with prejudice.[13]

Defendant now moves for an award of $1,076,678.35 in attorneys' fees and $68,277.29 in non-taxable expenses.

Discussion

"A party requesting an award of attorneys' fees and non-taxable expenses must show that it is (1) eligible for an award; (2) entitled to an award; and (3) requesting a reasonable amount of attorneys' fees." Smith v. Ariz., Case No. CV-13-00332-PHX-SRB, 2014 WL 11342455, at *1 (D. Ariz. Feb. 11, 2014) (citing LRCiv. 54.2(c)).

Defendant is eligible for attorneys' fees pursuant to A.R.S. § 12-341.01(A), which provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Defendant is also eligible for attorneys' fees and non-taxable expenses pursuant to Section 1717(a) of California's Civil Code, which provides that

> [i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is deter-

---

[12]Docket No. 105 at 25.

[13]Docket No. 106.

> mined to be the party prevailing on the contract, whether he or
> she is the party specified in the contract or not, shall be entitled
> to reasonable attorney's fees in addition to other costs.

The Administration Agreement, which is to "be governed exclusively by and construed in accordance with the applicable laws of the State of California," provides that "[i]f any action at law or in equity is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs...."[14]

In order to be entitled to fees pursuant to A.R.S. § 12-341.01(A), defendant must first show that this was a "contested action arising out of a contract." Although plaintiff asserted statutory and tort claims (the fraud claims) as well as contract claims, "'[i]t is well-established that a successful party on a contract claim may recover not only attorneys' fees expended on the contract claim, but also fees expended in litigating an interwoven tort claim.'" Modular Mining Systems, Inc. v. Jigsaw Technologies, Inc., 212 P.3d 853, 860 (Ariz. Ct. App. 2009) (quoting Ramsey Air Meds., L.L.C. v. Cutter Aviation, Inc., 6 P.3d 315, 318 (Ariz. Ct. App. 2000)). Plaintiff's fraud claims and contract claims were interwoven as evidenced by the court's order on defendant's motion to dismiss. The court held that plaintiff's common law fraud claims were barred by the economic loss rule because they were "based on the same alleged conduct as [plaintiff's] contract claims[.]"[15] And, the court

---

[14]Administration Agreement at 2-3, ¶¶ 16, 22, Exhibit 3, Declaration of Paul T. Hourihan [etc.], which is appended to Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 112.

[15]Order re Motion to Dismiss at 19, Docket No. 24.

found that "[p]laintiff's statutory fraud claim [was] based on allegations that defendant represented that its contracts guaranteed that plaintiff would be charged the lowest governmental pricing for office supplies", which were "representations as to the meaning of the contract, not representations of fact."[16]  Defendant is entitled to recover fees expended on both plaintiff's fraud claims and plaintiff's contract claims, as long as defendant meets the other requirements of A.R.S. § 12-341.01.

In order to be entitled to fees under A.R.S. § 12-341.01, defendant must also show that it was the successful party.  "To determine whether a party is successful under Section 12–341.01, a court should consider 'the totality of the circumstances and the relative success of the litigants.'"  Medical Protective Co. v. Pang, 740 F.3d 1279, 1283 (9th Cir. 2013) (quoting McAlister v. Citibank, 829 P.2d 1253, 1262 (Ariz. Ct. App. 1992)).  "Where, as here, a case involves multiple claims..., 'the successful party is the net winner.'"  Id. (quoting Berry v. 352 E. Va., LLC, 261 P.3d 784, 788 (Ariz. Ct. App. 2011)).  "Courts may determine the relative success of the parties by using a 'percentage of success factor' test, or by looking at the 'totality of the litigation.'"  Id. (quoting Schwartz v. Farmers Ins. Co. of Ariz., 800 P.2d 20, 25–26 (Ariz. Ct. App. 1990)).

Defendant contends that it is entitled to fees under Section 12-341.01 for the period of time up until its motion to dismiss was granted.  Although as plaintiff points out, defendant was only partially successful on the motion to dismiss, all but one of plaintiff's

---

[16]Id.

claims were dismissed as a result of defendant's motion to dismiss. In addition to plaintiff's fraud claims being dismissed, the court also dismissed plaintiff's contract claims which were based on the Master Agreement. Plainly, defendant was the successful party as far as the motion to dismiss was concerned.

"If the court finds that a party is the 'successful party' as envisioned in A.R.S. §12-341.01, the court may then exercise its discretion on whether to award reasonable attorneys' fees." Lexington Ins. Co. v. Scott Homes Multifamily Inc., Case No. CV-12-02119-PHX-JAT, 2016 WL 5118316, at *4 (D. Ariz. Sept. 21, 2016). "[T]here is no presumption that a successful party should be awarded attorney fees under § 12-341.01.'" Motzer v. Escalante, 265 P.3d 1094, 1095 (Ariz. Ct. App. 2011).

> In determining whether to exercise its discretion to award attorneys' fees under § 12-341.01(A), the Arizona Supreme Court concluded in Associated Indemnity that a court may consider, among other factors, the following:
>
> (1) the merits of the unsuccessful parties' claim or defense; (2) whether litigation could have been avoided or settled; (3) whether assessing fees against the unsuccessful party would cause extreme hardship; (4) whether the successful party prevailed with respect to all relief sought; (5) the novelty of the issues; and (6) whether the award will overly deter others from bringing meritorious suits.

Lexington Ins. Co., 2016 WL 5118316, at *4 (quoting Velarde v. PACE Membership Warehouse, Inc., 105 F.3d 1313, 1319 (9th Cir. 1997)).

Plaintiff urges the court to exercise its discretion and not award defendant any attorneys' fees under Section 12-341.01(A). Plaintiff argues that fees should not be awarded because doing so would discourage litigants from advancing positions which have merit. Plaintiff argues that its claims had merit and that this was a close case, as evidenced by the fact that one of plaintiff's claims survived the motion to dismiss and that the court found both parties' interpretation of the Pricing Commitment reasonable, if only the four corners of the Administration Agreement were considered.[17] Plaintiff also argues that fees should be not awarded because this case involved a public agency attempting to protect the tax dollars of its constituents. Finally, plaintiff argues that it did not bring its claims in bad faith.

The court is not persuaded by plaintiff's arguments. While plaintiff's complaint was not frivolous nor brought in bad faith, all of plaintiff's claims lacked merit. Defendant also engaged plaintiff in a serious effort to avoid litigation. Assessing attorneys' fees on a large governmental agency such as plaintiff will not cause extreme hardship. The business arrangement between defendant and plaintiff was novel but the issues to be resolved were not. And, there is no reason to believe that imposing attorneys' fees will deter plaintiff or others from bringing meritorious suits. Defendant is entitled to attorneys' fees under A.R.S. § 12-341.01(A).

As for defendant's entitlement to attorneys' fees and non-taxable expenses under Section 1717(a) of California's Civil Code, "[w]here a nonsignatory plaintiff sues a signatory

---

[17]Order re Cross-Motions for Summary Judgment at 11, Docket No. 105.

defendant in an action on a contract and the signatory defendant prevails, the signatory defendant is entitled to attorney fees only if the nonsignatory plaintiff would have been entitled to its fees if the plaintiff had prevailed." <u>Cargill, Inc. v. Souza</u>, 201 Cal. App. 4th 962, 967 (Cal. Ct. App. 2011) (citation omitted). Plaintiff argues that it would not have been entitled to fees under the Administration Agreement because it was not a party to that agreement. Plaintiff cites to <u>Sessions Payroll Management, Inc. v. Noble Const. Co.</u>, 101 Cal. Rptr. 2d 127 (Cal. Ct. App. 2000), in support of its argument. There, the attorney fee clause in the contract provided:

> In the event it becomes necessary for <u>either party</u> to enforce the provisions of this Agreement or to obtain redress for the violation of any provision hereof, whether by arbitration, or otherwise, the prevailing party shall be entitled to recover from the other party all costs and expenses associated with such action, including statutory interest and reasonable attorney fees.

<u>Id.</u> at 130. The court held that a third-party beneficiary would not be entitled to attorneys' fees under this clause because the recovery of attorneys' fees was expressly limited to "either party." <u>Id.</u> at 133. The court explained that the word "'party' limits recovery of attorney fees to a 'party' to the contract, reflecting the intent of Noble and Mackey to exclude non-signatories, such as Sessions, from the scope of the attorney fee clause." <u>Id.</u>

As defendant is quick to point out, the attorney fee clause in the Administration Agreement is quite different from the one in <u>Sessions</u>. While the <u>Sessions</u> clause expressly referred to disputes between the parties to the contract, the clause in the Administration Agreement refers to <u>any action</u> involving enforcement of the terms of the agreement. The

attorney fee clause in the Administration Agreement does not reflect an intent to exclude non-signatories, such as plaintiff, from the scope of the clause. Because this was an action involving enforcement of the terms of the Administration Agreement, plaintiff would have been entitled to attorneys' fees as a third-party beneficiary had it prevailed on its claim that defendant breached the agreement. In turn, that means that, under California law, defendant is entitled to attorneys' fees and non-taxable expenses.

Turning then to the reasonableness of defendant's request for attorneys' fees, "[r]easonability is generally analyzed under the 'lodestar method[.]" <u>Lexington Ins. Co.</u>, 2016 WL 5118316, at *4. "The lodestar method of calculating reasonable attorneys' fees is a two-step process whereby a court multiplies the number of hours reasonably expended by a reasonable hourly rate and then determines if any of the identified lodestar factors favor enhancing or reducing the arrived at product." <u>Id.</u> (citation omitted). The lodestar factors have been incorporated into Local Rule 54.2(c)(3):

> (A) The time and labor required by counsel;
>
> (B) The novelty and difficulty of the questions presented;
>
> (C) The skill requisite to perform the legal service properly;
>
> (D) The preclusion of other employment by counsel because of the acceptance of the action;
>
> (E) The customary fee charged in matters of the type involved;

(F) Whether the fee contracted between the attorney and
    the client is fixed or contingent;

(G) Any time limitations imposed by the client or the circumstances;

(H) The amount of money, or the value of the rights, involved, and the
    results obtained;

(I) The experience, ability and reputation of counsel;

(J) The "undesirability" of the case;

(K) The nature and length of the professional relationship between the
    attorney and the client;

(L) Awards in similar actions; and

(M) Any other matters deemed appropriate under the circumstances.

LRCiv 54.2(c)(3).

Defendant argues that the $41,371.00 billed by its local counsel, Osborn Maledon,

was reasonable.  Plaintiff raises no challenges to the rates billed by the Osborn Maledon

attorneys ($575, $290, $240) or the Osborn Maledon document clerk ($70).[18]  Plaintiff also

does not contend that the number of hours billed by Osborn Maledon (100.4 hours) was

unreasonable.

The court finds that the rates billed by Osborn Maledon were reasonable as were the

number of hours billed.  The lodestar amount for Osborn Maledon is $41,371.00.  There are

---

[18]Declaration of David Rosenbaum [etc.] at 3, ¶ 14; 4-5, ¶ 19; which is appended to
Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 112.

no lodestar factors that would require an increase or reduction to this amount. Defendant is entitled to $41,371.00 in attorneys' fees for the work done by Osborn Maledon.

Defendant also argues that the $1,035,307.35 in fees billed by Williams & Connolly, the Washington D.C. firm that represented defendant, was reasonable. First. defendant argues that the rates billed by Williams & Connolly were reasonable.[19] The seven attorneys who worked on this case billed at the following rates:

|  | 2014 rate | 2015 rate | 2016 rate |
| --- | --- | --- | --- |
| Daniel Katz | $756 | n/a | $801 |
| Paul Hourihan | $616.50 | $639 | $661.50 |
| William Ashworth | $553.50 | n/a | n/a |
| Juli Ann Lund | $526.50 | $544.40 | $562.50 |
| Elise Baumgarten | n/a | $441 | $495 |
| Tracey Fung | $382.50 | n/a | n/a |
| Noah Weiss | $355.50 | $396 | $445.50 |

The four paralegals who worked on this case billed at the following rates:

|  | 2014 rate | 2015 rate | 2016 rate |
| --- | --- | --- | --- |
| Alice Kim | n/a | n/a | $175.50 |
| Sarah Winstead | $220.50 | $229.50 | $238.50 |
| Hiwot Woldesemiat | n/a | n/a | $229.50 |

---

[19]All of the rates below are taken from the Hourihan Declaration at 3, ¶ 11, which is appended to Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 112.

| | | | |
|---|---|---|---|
| Denise Zdelar | $229.50 | n/a | n/a |

The two litigation support staff people who worked on this case billed at the following rates:

| | 2014 rate | 2015 rate | 2016 rate |
|---|---|---|---|
| Patrick Markey | n/a | $297 | $306 |
| Roger Faustin | $247.50 | n/a | n/a |

And the five library staff members who worked on this case billed at the following rates:

| | 2014 rate | 2015 rate | 2016 rate |
|---|---|---|---|
| Julie Chen | $220.50 | n/a | n/a |
| Nora Clinton | n/a | n/a | $247.50 |
| Matthew Foley | $238.50 | n/a | n/a |
| Deddeh Jones | $225 | n/a | n/a |
| Natalie Yeager | $225 | n/a | $243 |

Plaintiff only objects to the rates billed by Hourihan and Lund. Plaintiff acknowledges that

> in corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case.

Schweiger v. China Doll Restaurant, Inc., 673 P.2d 927, 931–32 (Ariz. Ct. App. 1983). But, plaintiff points out that "[t]he court ... is not bound by the agreement between the parties. While it is unlikely that the court will adjust the hourly rate upward, upon the presentation of an opposing affidavit setting forth reasons why the hourly billing rate is unreasonable, the

-13-

court may utilize a lesser rate." Id. at 932. Rather than offering an opposing affidavit, plaintiff offers an expert report from William Klain, "a Member of Lang & Klain, PC, a law firm located in Scottsdale, Arizona, where [he is] the head of the firm's litigation group."[20]

Klain opines that the hourly rates charged by Hourihan and Lund were excessive when compared to the reasonable hourly rates prevailing in the Phoenix area.[21] Klain averaged the rates charged by Hourihan, a partner with 21 years of experience, to be $647.[22] Klain then compared Hourihan's average rate of $647 to the rates charged by five lawyers at regional and national firms in Phoenix with 20-23 years of experience, which were $375, $385, $435, $475, and $500.[23] Klain also compared Hourihan's average rate of $647 to the Arizona Bar Survey, which shows that the average hourly rate for lawyers with 20-29 years of experience is $302.[24] Klain averaged the rates charged by Lund, who has 18 years of experience, to be $550.[25] Klain compared Lund's average rate of $550 to the rate charged by a Phoenix lawyer with 18 years of experience, which was $350.[26] Klain also compared Lund's average rate of

---

[20]Export Report of William G. Klain, Esq. at 1, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 126.

[21]Id. at 5.

[22]Id.

[23]Id. at 6.

[24]Id.

[25]Id. at 5.

[26]Id. at 6.

$550 to the Arizona Bar Survey, which shows that the average hourly rate for lawyers with 15-19 years of experience is $286.[27]   Based on these comparisons, Klain opines that Hourihan's rate should be adjusted to $425  and Lund's to $375.[28]  Plaintiff argues that these adjusted rates are in line with what defendant would have been charged had it hired a local Phoenix firm, rather than using a D.C. firm that had much higher rates.

The rates charged by Hourihan and Lund were the rates defendant agreed to pay[29] and based on the Schweiger presumption for commercial litigation, the court finds that these rates were reasonable.  Moreover, choosing Williams & Connolly because of its experience with similar litigation was a prudent choice.  The court has calculated Hourihan's average rate to be $639 and Lund's to be $545.  There are the rates that will be used for lodestar purposes.

Williams & Connolly billed 1,906.9 hours.[30]  The bulk of this time was billed by Hourihan and Lund, with Hourihan billing 846.2 hours and Lund billing 718.2 hours.[31]  The other five lawyers billed only 57.4 hours combined.[32]  The non-attorney timekeepers billed

---

[27]Id.

[28]Exhibit 2 at 1, Klain Report, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 126.

[29]Hourihan Declaration at 2, ¶ 9, which is appended to Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 112.

[30]Id. at 6, ¶ 20.

[31]Id.

[32]Id

a total of 284.8 hours.[33]  Defendant argues that the time expended on this matter by the Williams & Connolly timekeepers was reasonable because this litigation took 31 months and involved multiple contracts, the application of the law of two states, and the taking or defending of seventeen depositions in four different states.  Hourihan avers that in his opinion, the amount of time spent on this matter was reasonable.[34]

Plaintiff argues that the time expended on this matter by Williams & Connolly was excessive.  First, plaintiff challenges the fees associated with a public records request that defendant made.  Plaintiff contends that Williams & Connolly billed 59.4 hours for this work,[35] which involved making a public records request and then drafting a separate lawsuit against plaintiff for allegedly failing to promptly respond to the request.  The public records lawsuit was never filed.  Fees are allowed in a public record request action "if the person seeking public records has substantially prevailed."  A.R.S. § 39-121.02(B).  Given that defendant never filed a public records suit, plaintiff argues that defendant could not have substantially prevailed and thus plaintiff argues that defendant should not be allowed to recover any fees for this work.

Defendant is entitled to recover fees for the public records work, which was part of its discovery efforts, but the 59.4 hours billed was excessive.  It should not have taken that

---

[33]Id.

[34]Id. at 7, ¶ 21.

[35]Exhibit 7, Klain Report, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 126.

many hours for defendant to send plaintiff a public records request and then draft a four page complaint[36] regarding plaintiff's failure to respond promptly. It was also not reasonable for a partner (Hourihan) to spend 19.1 hours on the public records request matter or for Lund, an attorney with 18 years experience, to spend 28.2 hours. The 12.1 hours spent by the other timekeepers on this task was reasonable, but it would have been sufficient for Lund and Hourihan to have each spent one hour reviewing the other timekeepers' work. The 59.4 hours billed for the public records will be reduced to 14.1 hours. 18.1 hours will be deducted from Hourihan's hours and 27.2 hours will be deducted from Lund's hours.

Next, plaintiff argues that many of Williams & Connolly's time entries do not comply with Local Rule 54.2(e)(2), which provides that "[t]he party seeking an award of fees must adequately describe the services rendered so that the reasonableness of the charge can be evaluated. Plaintiff argues that Williams & Connolly failed to meet this requirement for the following: 1) 7.1 hours of telephone conferences, 2) 75.4 hours of legal research, 3) 237.7 hours of document preparation, and 4) 110.1 hours of other preparation tasks.[37] Plaintiff argues that because defendant failed to adequately describe these tasks, all of this time (347.80 hours) should be reduced by 33 percent.

---

[36]Exhibit 12 at 2, Declaration of Juli Ann Lund [etc.], which is appended to Defendant's Reply in Support of Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 128.

[37]Klain Report at 9-10, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 126.

The specific time entries to which plaintiff is objecting are identified in Exhibit 13 to Klain's report. The court has reviewed these entries and finds that Williams & Connolly's time entries provide sufficient detail.

Third, plaintiff argues that Williams & Connolly improperly billed for travel time. Williams & Connolly billed 62.9 hours of travel-only time,[38] even though "[o]rdinarily air travel time should not be charged." LRCiv 54.2(e)(2)(D). Williams & Connolly also billed for 135.8 hours of travel time bundled with other tasks, but plaintiff argues that Williams & Connolly's time entries fail to adequately describe what tasks were performed during this travel time. The Local Rules provide that "[i]f services are performed during [travel] time, then describe such services rather than charging for travel time." Id. Plaintiff argues that the 62.9 hours for travel-only time should be excluded and that the 135.8 hours for bundled time should be reduced by 50 percent.

Defendant points out that the local rule says that travel is not ordinarily charged, which means that there is not a complete bar to being awarded fees for travel. But, this was not an extraordinary case and the 62.9 hours of travel-only time that was billed will be excluded. The bundled time will not be excluded because Williams & Connolly's time entries appear reasonable and sufficient detail has been provided.

Fourth, plaintiff argues that the time spent on defendant's motion to dismiss was excessive. Plaintiff contends that William & Connolly expended 185.8 hours on the motion

---

[38]Id. at 10.

to dismiss ($99,471.60 in fees) and that Lund billed 114.1 hours and Hourihan billed 51.6.[39]

Klain opines that "[b]illing nearly $100,000 for a motion to dismiss is facially unreasonable, especially considering that the issues - at least as described by [defendant] in its filings – involved a simple matter of interpreting 'plain language' according to settled rules of contract interpretation."[40] Plaintiff suggests that a more reasonable amount of time to have spent on the motion to dismiss would have been 144 hours.

Defendant contends that Williams & Connolly only billed 173.6 hours in connection with the motion to dismiss,[41] and the court accepts defendant's computation of the number of hours expended on the motion to dismiss. But devoting almost 174 hours on a motion to dismiss five claims was excessive. In general, the time the Williams & Connolly lawyers expended on tasks was excessive. For example, Hourihan spent 30.9 hours preparing for the oral argument on the motion to dismiss.[42] The primary problem with the hours expended on the motion to dismiss however is with how Williams & Connolly allocated work. Lund, a lawyer with 18 years of experience, and Hourihan, a partner with 21 years of experience, did

---

[39]Exhibit 5, Klain Report, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126.

[40]Klain Report at 12, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 126.

[41]Lund Declaration at 2, ¶ 5, which is appended to Defendant's Reply in Support of Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 128.

[42]Exhibit 2 at 48-49, Hourihan Declaration, which is appended to Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 112.

most of the work on the motion to dismiss. Much of the research and drafting could have been done by associates. This issue will be addressed below when the court considers the lodestar factors.

Fifth, plaintiff argues that the time spent on general discovery tasks, not including document production and management or depositions, was excessive. Plaintiff contends that Williams & Connolly billed 228.8 hours for general discovery tasks.[43] Klain opines that "[s]pending over 225 hours on general discovery tasks was not reasonable, nor was it reasonable to expend nearly $135,000 on these items."[44] Plaintiff suggests that a more reasonable amount of time to have spent on general discovery tasks would have been 220 hours,[45] but this amount includes the 59.4 hours already excluded for the work on the public records request. That leaves 160.6 hours spent on general discovery tasks. This was not an unreasonable amount of time to spend on these tasks.

Sixth, plaintiff argues that the time spent on document tasks, not including reviewing documents for specifically-identified subjects such as for a particular deposition, was excessive. Plaintiff contends that Williams & Connolly billed 366.2 hours for these general

---

[43]Klain Report at 12, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126.

[44]Id. at 13.

[45]Exhibit 6, Klain Report, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126.

document tasks.[46]  Klain avers that "[a]lthough Williams & Connolly billed almost $50,000 to create search terms and manipulate document databases, ... the lead attorneys still spent over 200 hours simply reviewing documents[,]"[47] which was over half the total number of hours billed for general document tasks.

Defendant contends that Hourihan and Lund had to review the documents produced by plaintiff personally because plaintiff did not make its first ESI production until November 30, 2015, which was shortly before depositions of plaintiff's employees were to begin. However, given that plaintiff's fraud claims were dismissed early on and that there was only one remaining claim by the time the lawyers were preparing for depositions, spending 200 hours reviewing documents was excessive.  Time allowed for document tasks will be reduced from 366. 2 hours to 183.1 hours.  100 hours will be deducted from Hourihan's hours and 83.1 hours will be deducted from Lund's hours.

Seventh, plaintiff argues that the time that Williams & Connolly billed for preparing for, traveling to, and taking depositions was excessive.  Plaintiff contends that there were twenty-four depositions taken in this case[48] and that Williams & Connolly billed 648.7 hours

---

[46]Klain Report at 13, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126.

[47]Id.

[48]Defendant contends there were only seventeen depositions taken.

for deposition-related work.[49] Klain opines that this was unreasonable and that a more reasonable amount would have been 516.2 hours.[50]

Defendant contends that Williams & Connolly only billed 595.90 hours for depositions,[51] which presumably includes the 62.9 hours for travel-only time (27.4 hours for Hourihan and 35.5 for Lund) that is being excluded.[52] That leaves 533 hours, which, if there were 24 depositions taken as plaintiff contends, means that Williams & Connolly billed slightly over 22 hours per deposition. This was excessive, in part because much of this time was duplicative as it appears that both Lund and Hourihan attended most depositions. Time allowed for preparing for and attending depositions will be reduced from 533 hours to 266.5 hours. 133.5 hours will be deducted from Hourihan's hours and 133 hours from Lund's hours.

Eighth, plaintiff argues that the time that Williams & Connolly billed for the cross-motions for summary judgment was excessive. Plaintiff contends that Williams & Connolly

[49]Klain Report at 14, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126.

[50]Klain Report at 14 and Exhibit 9 thereto, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126.

[51]Lund Declaration at 2, ¶ 6, which is appended to Defendant's Reply in Support of Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 128.

[52]According to Klain's report, 58.4 hours of the travel-only time was billed in connection with depositions and 4.5 hours was billed in connection with the motion to dismiss. Exhibits 5, 9, Klain Report, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126. For ease of calculation, the court has deducted all of the travel-only time from the hours billed for deposition work.

billed 244.6 hours ($137,444.40) for the cross-motions, with Lund billing 161.6 hours and Hourihan billing 49.4.[53] Klain opines that "[s]pending almost $140,000 on cross-motions for summary judgment is not reasonable, especially considering that this sum does not include all of the discovery and document work previously billed."[54] Plaintiff argues that a more reasonable amount would have been 189.7 hours.[55]

Defendant contends that Williams & Connolly only billed 237.80 hours on the cross-motions for summary judgment.[56] Defendant argues that given the nature of the cross-motions, which consisted of 90 pages of briefing with 173 exhibits, this amount of time was not unreasonable.

Although the amount of time expended on the cross-motions strikes the court as excessive, as with the motion to dismiss, the primary problem with the cross-motions is that the majority of the work was done by Lund, an attorney with 18 years of experience, rather than by an associate who would have billed at a lower rate. There is no reason why an associate could not have done much of the work on the cross-motions. Defendant repeatedly

---

[53]Klain Report at 14 and Exhibit 11 thereto, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126.

[54]Klain Report at 15, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 126.

[55]Exhibit 11, Klain Report, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126.

[56]Lund Declaration at 2, ¶ 7, which is appended to Defendant's Reply in Support of Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 128.

refs to this as a complex case, but it was not that complex, and it certainly was not that complex by the time work was being done on the cross-motions, when there was only one claim left in the case. But as with the motion to dismiss, the court will address the allocation of work problem when it considers the lodestar factors.

Ninth, plaintiff argues that the time that Williams & Connolly billed for general litigation tasks that did not fall into any of the categories discussed above was excessive. Plaintiff contends that Williams & Connolly billed 200.9 hours for general litigation tasks, which included tasks such as drafting the answer, export reports, and settlement discussions.[57] Plaintiff argues that a more reasonable amount would have been 186.9 hours.[58]

As with most of the Williams & Connolly billing, this was excessive. Time allowed for general litigation tasks will be reduced from 200.9 hours to 186 hours. 14.9 hours will be deducted from Hourihan's hours.

In sum, the court finds that the number of hours reasonably expended on this case by Williams & Connolly was 1,334.2.[59] Hourihan's hours will be reduced by 293.9 hours[60] and

---

[57]Klain Report at 15, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126.

[58]Exhibit 12, Klain Report, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126.

[59]1906.9 - 45.3 (public records) - 62.9 (travel-only time) - 183.1 (document review) - 266.5 (depositions) - 14.9 (general litigation) = 1334.2.

[60]18.1 (public records) + 27.4 (travel-only time) + 100 (document review) + 133.5 (depositions) + 14.9 (general litigation) = 293.9.

Lund's hours will be reduced by 278.8 hours.[61]  For lodestar purposes, Hourihan's hours will

be 552.3,[62] Lund's will be 439.4,[63] and the other timekeepers' hours combined will be 342.5

hours.[64]  For lodestar purposes, Hourihan's rate is $639, Lund's is $545, and the other

timekeepers' rates are as set out above.  Hourihan's lodestar amount is $352,919.70.[65]

Lund's lodestar amount is $239,473.[66]   The other timekeepers' lodestar amount is

$95,117.40.[67]  The total lodestar amount for Williams & Connolly is $687,510.10.[68]

The court then considers whether the any of the lodestar factors suggest that an

adjustment to this amount should be made.  The lodestar factors do not suggest that any

increase would be appropriate.  The lodestar factors also do not suggest that a reduction

would be appropriate other than for how Williams & Connolly allocated work.  As discussed

above, rather than allocating work to associates who would bill at lower rates, the majority

---

[61]27.2 (public records) + 35.5 (travel-only time) + 83.1 (document review) + 133 (depositions) = 278.8.

[62]846.2 - 293.9 = 552.3.

[63]718.2 - 278.8 = 439.4.

[64]1334.2 - 552.3 - 439.4 = 342.5.

[65]$639 x 552.3 = $352,919.70.

[66]$545 x 439.4 = $239,473.

[67]The other timekeepers' amount is based on the calculations in Exhibit 2 to Klain's Report, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126.

[68]$352,919.70 + $239,473 + $95,117.40 = $687,510.10.

of work on the motions to dismiss and the cross-motions was done by Hourihan and Lund. The court finds that a twenty percent reduction would be appropriate, but this reduction will only be taken from Hourihan's and Lund's lodestar amounts. Hourihan's lodestar amount is reduced to $282,335.76[69] and Lund's is reduced to $191,578.40.[70] Defendant is thus entitled to $569,031.56 for the fees billed by Williams & Connolly.[71]

Finally, defendant seeks $66,215.01 in non-taxable expenses incurred by William & Connolly and $2,062.28 in non-taxable expenses incurred by Osborn Maledon, for a total of $68,277.29. These expenses include costs for photocopying, courier and delivery services, online legal research, expert services, parking expenses, and travel related to court appearances and depositions.

Plaintiff does not argue that defendant would not be entitled to recover these expenses pursuant to California Civil Code Section 1717. Rather, plaintiff raises a frivolous argument that defendant provided no authority that would justify an award of non-taxable expenses. As discussed above, defendant is eligible for non-taxable expenses pursuant to California Civil Code Section 1717. Defendant is entitled to recover any non-taxable expenses that were "'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation.'" <u>Genesis Merchant Partners, LP v. Nery's USA, Inc.</u>, Case

---

[69]$352,919.70 - $70,583.94 = $282,335.76.

[70]$239,473 - $47,894.60 = $191,578.40.

[71]$282,335.76 + $191,578.40 + $95,117.40 = $569,031.56.

No. 11-cv-1589 JM (WVG), 2013 WL 12094825, at *9 (S.D. Cal. Dec. 6, 2013) (quoting

Ladas v. Cal. State Auto. Assn., 19 Cal. App. 4th 761, 774 (Cal. App. Ct. 1993).

Plaintiff argues that the Williams & Connolly's expenses are unreasonable. Plaintiff

contends that Williams & Connolly billed about $23,000 in airfare and $20,000 in other

expenses[72] and argues that these costs were driven by defendant's decision to hire D.C.

counsel to handle depositions in an Arizona case. Plaintiff also argues that some of the

individual expenses seem excessive such as a January 11, 2016 charge for $2,563.20 for

airfare for Hourihan; an April 10, 2015 charge for $2,512.20 for airfare for Lund; a January

15, 2016 hotel charge of $1164.72 for Hourihan; a January 15, 2016 hotel charge of

$2026.26 for Lund; and a January 22, 2016 hotel charge of $2,026.20 for Hourihan.

As observed above, defendant made a prudent choice in selecting Williams &

Connolly to represent it in this matter as the Williams & Connolly lawyers had experience

in similar litigation. As for the specific items to which plaintiff objects, defendant offers

copies of the hotel bills which show that the charges were for multiple night stays, with a

nightly rate of $256, which is not unreasonable.[73] Defendant also offers evidence that it was

---

[72]Klain Report at 14, Exhibit A, Plaintiff's Response to Defendant's Motion for Attorney's Fees and Non-Taxable Expenses, Docket No. 126.

[73]Exhibits 19, 20, 21, Lund Declaration, which is appended to Defendant's Reply in Support of Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 128.

billed for a reduced rate for the two airfares to which plaintiff objects, not the full rate set out above.[74] These reduced rates, while high, were not unreasonable.

In sum, defendant's non-taxable expenses were reasonable. Defendant is entitled to an award of $68,277.29 in non-taxable expenses.

Conclusion

Defendant's motion[75] for attorneys' fees and non-taxable expenses is granted. Defendant is awarded $610,402.56 in attorneys' fees[76] and $68,277.29 in non-taxable expenses, for a total of $678,679.85.

DATED at Anchorage, Alaska, this 10th day of May, 2017.

/s/ H. Russel Holland
United States District Judge

---

[74]Lund Declaration at 5, ¶¶ 25-26 and Exhibits 22, 23, appended to Defendant's Reply in Support of Motion for Attorneys' Fees and Non-Taxable Expenses, Docket No. 128.

[75]and Exhibits 22, 23 thereto Docket No. 112.

[76]$41,371 (Osborn Maledon fees) + $569,031.56 (Williams & Connolly fees) = $610,402.56.