**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maricopa County, et al., | No. CV-14-01372-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Office Depot Incorporated, | |
| Defendant. | |

Pending before the Court are the parties' cross-motions for summary judgment concerning the statute of limitations. (Docs. 208, 213.) For the following reasons, both motions will be denied.

## BACKGROUND

### I. Relevant Procedural History

On May 1, 2014, Maricopa County brought this action in state court. (Doc. 1-1 at 4-19.) On June 19, 2014, Office Depot removed it to federal court. (Doc. 1.) The complaint alleged two contract-related claims (breach of contract and breach of the implied covenant of good faith and fair dealing) and claims for negligent misrepresentation, common law fraud, and violation of the Arizona Consumer Fraud Act ("ACFA"). (*Id.* at 15-19.) Essentially, Maricopa County alleged that a "bundle of interrelated documents and contractual agreements" between various parties comprised a contract that Maricopa County was "free to enforce . . . against Office Depot." (*Id.* at 12 ¶ 39.)

This "bundle" included a 2006 Master Agreement between Los Angeles County and

Office Depot, as well as various provisions included in or incorporated into Los Angeles County's Request for Proposal ("RFP"). (*Id.* at 8 ¶ 20, 9-11 ¶¶ 26-33.) It also included an Administration Agreement between U.S. Communities and Office Depot. (*Id.* at 8 ¶ 21.) The complaint alleged that the "contract terms and representations by Office Depot" led Maricopa County to "reasonably believe[] that under the 2006 Master Agreement Office Depot did in fact guarantee, and did provide, its best government pricing, without qualification." (*Id.* at 11 ¶ 36.) Yet, the complaint alleged, "[w]hile the 2001 and 2006 Master Agreements were in effect, Office Depot chose to violate its low price guarantee and sold office supplies to other governmental entities at prices materially lower than those offered to [Maricopa County] under the 2006 Master Agreement." (*Id.* at 12 ¶ 42.)

In June 2014, Office Depot moved to dismiss the complaint. (Doc. 10.) This motion was granted in part and denied in part. (Doc. 24.) The Court dismissed with prejudice the negligent misrepresentation, common law fraud, and ACFA claims because they were not pleaded with sufficient particularity and failed as a matter of law. (*Id.* at 17-19.) The Court also limited the contract-based claims. First, the Court found that Maricopa County did not have a direct contractual relationship with Office Depot. (*Id.* at 11 ["Although plaintiff alleges that it had a direct contractual relationship with defendant, plaintiff has not cited to any contract to which both it and defendant were parties. Plaintiff is not a party to the Master Agreement and plaintiff was not a party to any of the other agreements attached to the RFP or defendant's response to the RFP."].) The Court further found that Maricopa County failed to allege it was an intended beneficiary of the Master Agreement and thus dismissed the contract-based claims premised on an alleged breach of the Master Agreement. (*Id.* at 13-14.) However, the Court found that Maricopa County was a third-party beneficiary of the Administration Agreement and therefore could proceed on the contract-based claims premised on an alleged breach of the Pricing Commitment in the Administration Agreement. (*Id.* at 15-16.)

Maricopa County moved for reconsideration as to its ACFA claim and as to the ruling that Maricopa County had no direct contractual relationship with Office Depot.

(Doc. 26.)  This motion was denied.  (Doc. 27.)

In June 2016, the parties cross-moved for summary judgment on the remaining contract-based claims.  (Docs. 90, 91.)  The Court granted summary judgment to Office Depot, accepting Office Depot's interpretation of the Pricing Commitment and finding there was no breach under that interpretation.  (Doc. 105.)  Office Depot had also moved for partial summary judgment under the theory that most of Maricopa County's alleged damages fell outside the statute of limitations (Doc. 91 at 16-17), but the Court declined to address that argument in light of the determination that Office Depot was entitled to summary judgment on other grounds.

In December 2016, Maricopa County appealed.  (Doc. 109.)

In December 2018, the Ninth Circuit issued a memorandum decision that affirmed in part, and reversed in part, the Court's earlier decisions.  (Doc. 136-1.)  Because the parties now dispute the scope of the Ninth Circuit's ruling—and how it affects the scope of the mandate—it is important to be precise when summarizing its contents.  In the first portion of its decision, the Ninth Circuit upheld the dismissal of the negligent misrepresentation, fraud, and ACFA claims.  (Doc. 136-1 at 4-5.)   In the second portion of its decision, the Ninth Circuit upheld the dismissal of Maricopa County's "contract claims based on the Master Agreement."  (*Id.* at 5.)  Specifically, the court held that Maricopa County "lack[ed] standing" to enforce the price guarantee contained in Section 23 of the Master Agreement because (1) "[t]hat right vested solely in LA County," (2) "[t]he Agreement did not authorize piggybacking agencies such as Maricopa to enforce the price guarantee secured to LA County in Section 23," and (3) "the implicit contract created by the business relationship between Maricopa and Office Depot, to the extent that any such contract existed, does not empower Maricopa to enforce the provisions of contracts executed by other parties."  (*Id.*)  In support of these conclusions, the court cited an Arizona case that applied Arizona substantive law.  (*Id.,* citing *Nahom v. Blue Cross & Blue Shield of Arizona, Inc.*, 885 P.2d 1113, 1117 (Ariz. Ct. App. 1994).)  Finally, in the third portion of its decision, the Ninth Circuit reversed the grant of summary judgment in Office Depot's

favor on Maricopa County's claim for breach of the Pricing Commitment within the Administration Agreement "because material disputes of fact remain . . . as to whether the Administration Agreement required Office Depot to provide piggybacking entities with the lowest pricing that Office Depot offered to any state or local government entity nationwide, including San Francisco (Maricopa's position), or whether 'available' meant the price the public agency would actually receive under another cooperative purchasing agreement for which it was eligible to participate (Office Depot's position)." (*Id.* at 6-7.) In support of this conclusion, the court cited a case that applied California substantive law. (*Id.*, citing *Cachil Dehe Band of Wintun Indians v. California*, 618 F.3d 1066, 1077 (9th Cir. 2010).)

In April 2019, after the Ninth Circuit issued its mandate, this case was reassigned to the undersigned judge. (Docs. 136, 145.) Afterward, the parties filed an array of pretrial motions.

On October 9, 2019, the Court issued a 48-page order resolving seven motions in limine (Docs. 155, 156, 157, 158, 159, 160, 161), two motions to exclude expert opinions (Docs. 171, 172), supplemental briefs regarding whether Maricopa County is entitled to a jury trial (Docs. 193, 195, 196), and supplemental briefs concerning the applicability of the Uniform Commercial Code (Docs. 198, 199). (Doc. 203.)

One of Office Depot's motions in limine sought to exclude all evidence barred by the statute of limitations. (Doc. 157.) The Court denied this motion without prejudice and instead authorized Office Depot to file a motion for partial summary judgment limited to the statute of limitations. (Doc. 203 at 15.) Afterward, Office Depot timely filed a motion for partial summary judgment (Doc. 208), Maricopa County filed a cross-motion for partial summary judgment and a response to the motion (Doc. 213),[1] Office Depot filed a reply (Doc. 218), and Maricopa County filed a reply (Doc. 223).

[1] The Court did not authorize Maricopa County to cross-move for summary judgment. Nevertheless, because the issue on which Maricopa County's cross-moves— whether "Arizona law provides the statute of limitations governing this dispute" (Doc. 213 at 1)—is bound up with the issues raised by Office Depot, the Court will consider (and deny) Maricopa County's cross-motion on the merits. Maricopa County also requested oral argument, but that request is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

- 4 -

II.     Relevant Factual Background

The Administration Agreement between Office Depot and U.S. Communities took effect on January 2, 2006.  (Doc. 209 at 2.)  The Pricing Commitment is one of three Commitments set forth in the Supplier Commitments, a single-page document incorporated by reference in the Administration Agreement.  (Doc. 193-1 at 2 § 8 [incorporation provision]; *id.* at 6 [Supplier Commitments].)  The Pricing Commitment provides:

> A commitment that supplier's U.S. Communities pricing is the lowest available pricing (net to buyer) to state and local public agencies nationwide and a further commitment that, if a state or local public agency is otherwise eligible for lower pricing through a federal, state, regional or local contract, the supplier will match the pricing under U.S. Communities.

(*Id.* at 6.)

As noted in the Ninth Circuit's order, one of the key disputes in this case concerns the meaning of the Pricing Commitment.  Maricopa County contends the Pricing Commitment "require[d] [Office Depot's] U.S. Communities pricing to be . . . the lowest available pricing (net to buyer) to state and local public agencies nationwide, and that if [Office Depot] offered lower pricing to public agencies outside of U.S. Communities then that lower pricing bec[ame] [Office Depot's] U.S. Communities price."  (Doc. 186 at 11.)  Maricopa County further contends that Office Depot violated this provision by entering into a contract with the City and County of San Francisco ("CCSF") that offered lower pricing than the U.S. Communities contract.  (Notably, Maricopa County isn't arguing it should have been charged the same prices CCSF *actually* paid under that contract.  Instead, Maricopa County's theory is that it was entitled to the prices Office Depot *should have* been charging CCSF under the other contract, even though CCSF was actually charged and paid higher prices.)  Meanwhile, Office Depot's position is that the Pricing Commitment simply required it to offer its lowest available pricing to the subset of state and local public agencies who were members of U.S. Communities, "such that, if a U.S. Communities member was 'otherwise eligible' for lower pricing, Office Depot would offer that member that lower pricing under the aegis of U.S. Communities."  (Doc. 199 at 2.  *See also* Doc. 186 at 11-12 ["The second clause of the Pricing Commitment . . . sets out how to address

- 5 -

those occasional instances when an Office Depot contract potentially had lower pricing: if, based on the agency's usage, it would save money purchasing under a different contract held by Office Depot that the agency was eligible to use, Office Depot would treat that pricing as U.S. Communities' pricing."].)

In 2008, a former Office Depot salesman, David Sherwin, began sending faxes and emails to government agencies in which he alleged that Office Depot was engaging in various forms of pricing misconduct, including violations of the "best pricing" guarantees provided in the U.S. Communities contract. (Doc. 209 ¶ 11; Doc. 214 ¶ 11.)

In April 2008, in part in response to these allegations, Maricopa County requested that U.S. Communities conduct "a contract pricing review of [its] entire 2007 purchases [from Office Depot] of more than $4.6M." (Doc. 209-1 at 110.)

On May 21, 2008, U.S. Communities sent an email to a host of individuals, including Maricopa County representatives, that addressed Maricopa County's audit request and Mr. Sherwin's allegations. (Doc. 209 ¶ 12-23; Doc. 209-1 at 110-31; Doc. 214 ¶ 12-23, 192.) The email concluded that Maricopa County had *not* been overcharged. (Doc. 209-1 at 110.) The email also contained some forwarded materials from Mr. Sherwin, which contained references to Office Depot's contracts with Georgia, California, Nebraska, and North Carolina but no reference to Office Depot's contract with CCSF. (*See also* Doc. 214 ¶ 200.)

On June 4, 2008, U.S. Communities forwarded Office Depot's response to Sherwin's allegations to a host of individuals, including Maricopa County representatives. (Doc. 209 ¶ 24; Doc. 209-1 at 137-40; Doc. 214 ¶ 24.) In the response letter, which contained no mention of the CCSF contract, Office Depot stated in relevant part that "Mr. Sherwin's allegations are generally based on erroneous or distorted facts (if they are based on facts at all)" and "we have reviewed Mr. Sherwin's allegations, and we believe they are wholly without merit." (Doc. 209-1 at 138.)

On September 26, 2008, a Maricopa County representative received an email from Mr. Sherwin. (Doc. 209 ¶¶ 28-31; Doc. 209-2 at 7-16; Doc. 214 ¶¶ 28-31.) Although this

email alleged that Office Depot had entered into a contract with the state of North Carolina that offered lower pricing than the U.S. Communities contract, it contained no mention of, or allegations concerning, the CCSF contract. (*Id.  See also* Doc. 214 ¶ 200.)

Between October 13-22, 2008, a Maricopa County representative received a series of additional emails from Mr. Sherwin. (Doc. 209 ¶¶ 32-40; Doc. 209-2 at 18-36; Doc. 214 ¶¶ 32-40.) Although these emails identified additional Office Depot contracts that purportedly offered lower pricing than the U.S. Communities contract, it contained no mention of, or allegations concerning, the CCSF contract. (*Id.  See also* Doc. 214 ¶ 200.)

On October 28, 2008, a U.S. Communities representative sent an email to a host of individuals, including Maricopa County representatives, addressing "Mr. Sherwin's most recent round of allegations" concerning the pricing available under Office Depot's contracts with California, North Carolina, and the city of Berkeley. (Doc. 209-2 at 38.) This email concluded that, "[a]s with Mr. Sherwin's prior allegations, his current allegations contain numerous errors and misleading statements." (*Id.*) Additionally, the email included, as an attachment, an email from Office Depot averring that any pricing difference between those contracts and the U.S. Communities contract was "inconsequential." (*Id.* at 40.)

Between November 2008 and July 2009, Mr. Sherwin kept sending emails to Maricopa County representatives in which he alleged that Office Depot was engaging in pricing-related misconduct. (Doc. 209 ¶¶ 47-88; Doc. 214 ¶¶ 47-88.) None of these emails mentioned, or contained allegations concerning, the CCSF contract. (*Id.  See also* Doc. 214 ¶ 200.)

On December 18, 2009, CCSF issued an audit report concerning its contract with Office Depot, which concluded that CCSF had been overcharged by several million dollars. (Doc. 214 ¶ 202; Doc. 214-1 at 43-89.)

On December 22, 2009, the CCSF audit report was provided to U.S. Communities and Office Depot and otherwise became publicly available. (Doc. 214 ¶ 202; Doc. 214-1 at 91-92.)

By no later than January 4, 2011, Maricopa County became aware of the CCSF audit report. (Doc. 214 ¶ 203; Doc. 209-3 at 43-46 [January 4, 2011 email in which Maricopa County representatives were forwarded the summary of an upcoming web seminar concerning the CCSF audit].) Around that time, Maricopa County began conducting its own pricing review/audit. (Doc. 209 ¶ 150; Doc. 214 ¶ 150.)

On August 26, 2011, Maricopa County sent a letter to Office Depot explaining that "[w]e are conducting a review of Maricopa County's participation in the Master Agreement" and requesting copies of certain materials. (Doc. 214 ¶ 205; Doc. 214-1 at 98.) However, Office Depot did not provide all of the requested information. (Doc. 214 ¶ 207.)

On October 8, 2012, Maricopa County completed its audit and concluded, "based on price lists approved by [CCSF]," that it had been overcharged by several million dollars "due to Office Depot's failure to honor low price guarantees." (Doc. 204 ¶ 151; Doc. 214 ¶ 151; Doc. 214-1 at 105.)

Office Depot and Maricopa County subsequently entered into a tolling agreement that tolled claims for the period commencing on August 23, 2013. (Doc. 204 ¶ 152; Doc. 204-4 at 42-44; Doc. 214 ¶ 152.)

## ANALYSIS

### I. Legal Standard

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . .

1   [the] moving party carries its burden of production, the nonmoving party must produce
2   evidence to support its claim or defense." *Id*. at 1103.

3       "Summary judgment is appropriate when 'there is no genuine dispute as to any
4   material fact and the movant is entitled to judgment as a matter of law.'" *Rookaird v. BNSF*
5   *Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A genuine
6   dispute of material fact exists if 'there is sufficient evidence favoring the nonmoving party
7   for a jury to return a verdict for that party.'" *United States v. JP Morgan Chase Bank*
8   *Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $ 446,377.36*, 835 F.3d
9   1159, 1162 (9th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-
10  50 (1986)). The court "must view the evidence in the light most favorable to the
11  nonmoving party and draw all reasonable inference in the nonmoving party's favor."
12  *Rookaird*, 908 F.3d at 459. Summary judgment is also appropriate against a party who
13  "fails to make a showing sufficient to establish the existence of an element essential to that
14  party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477
15  U.S. at 322.

16  II.    The Applicable Choice-Of-Law Provision

17      The underlying contracts in this case contain several different choice-of-law clauses
18  and the parties' first disagreement concerns which clause should be deemed applicable.

19      Office Depot argues the relevant clause is paragraph 22 of the Administration
20  Agreement, which provides that "[t]his Agreement shall be governed exclusively by and
21  construed in accordance with the applicable laws of the State of California as a contract
22  executed and delivered within the State of California and to be fully performed within the
23  State of California." (Doc. 208 at 2 & n.3, citing Doc. 209-1 at 12.) Maricopa County
24  disagrees, arguing in its response/cross-motion that because the Administration Agreement
25  "incorporates by reference" the Master Agreement and the Master Intergovernmental
26  Cooperative Purchasing Agreement ("MICPA"), both of which contain clauses stating they
27  should be construed in accord with the law of the state of purchase (Doc. 209-3 at 32; Doc.
28  214-1 at 2), and because Office Depot and Maricopa County became "direct" bilateral

contractual partners at some point after the Administration Agreement was executed, the relevant contractual clauses from the Master Agreement and MICPA mandate the application of Arizona law. (Doc. 213 at 2-3, 6-7, 14 n.4.) In its reply, Office Depot argues that Maricopa County's "direct contract" theory is barred by the mandate rule and by the law of the case. (Doc. 218 at 2-3.) Finally, in its reply, Maricopa County argues the law of the case arguably supports its position (because the Court stated, in a 2014 order, that Arizona law controlled the statute of limitations), that the Court retains discretion in any event to revisit the law of the case, and that the mandate rule is inapplicable because the Ninth Circuit's memorandum decision doesn't contain any discussion of statute-of-limitations or choice-of-law issues. (Doc. 223 at 1-6.)

Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). "Law of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618 (1983). The mandate rule, on the other hand, provides that when a case has been appealed and remanded, "whatever was before [the appellate court], and disposed of by its decree, is considered as finally settled." *United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (*quoting In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255-56 (1895)).

In the Ninth Circuit, the mandate is "jurisdictional" rather than an iteration of the law of the case doctrine, meaning that a district court has no authority to depart from matters settled by appellate decision. *Id*. at 982. However, the "rule of mandate allows a lower court to decide anything not foreclosed by the mandate." *Herrington v. Cty. Of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993). "[I]n construing a mandate, the lower court may consider the opinion the mandate purports to enforce as well as the procedural posture and substantive law from which it arises." *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000). "[T]he ultimate task is to distinguish matters that have been decided on appeal, and are therefore beyond the jurisdiction of the lower court, from matters that

have not." *Id.*

Here, the mandate rule compels the conclusion that paragraph 22 of the Administration Agreement is the applicable choice-of-law provision. The starting point for the analysis is the December 2016 summary judgment order. There, the Court specifically rejected Maricopa County's theory that it could assert a direct breach-of-contract claim against Office Depot premised on the Master Agreement or the MICPA and concluded that Maricopa County could only assert a breach of the Administration Agreement under a third-party beneficiary theory. (Doc. 105 at 8 ["Plaintiff's remaining contract claims are not based on allegations that defendant breached the Master Agreement or the MICPA. Rather, plaintiff's remaining contract claims are based on allegations that defendant breached the Pricing Commitment in the Administration Agreement."].) After reaching those conclusions, the Court further held that Maricopa County's claims under the Administration Agreement were governed by California law. (*Id.* ["The Administration Agreement plainly provides that California law applies to any disputes as to the interpretation of that agreement."].)

The Ninth Circuit did not reverse any of these conclusions in its December 2018 memorandum decision. To the contrary, the appellate court affirmed the dismissal of "Maricopa's contract claims based on the Master Agreement," holding that Maricopa County wasn't entitled to assert any claims premised on an alleged breach of the Master Agreement's price guarantee and that "the implicit contract created by the business relationship between Maricopa and Office Depot, to the extent that any such contract existed, does not empower Maricopa to enforce provisions of contracts executed by other parties." (Doc. 136-1 at 5.) Finally, as for Maricopa County's claims arising from the Administration Agreement, although the appellate court reversed the grant of summary judgment, it did so only due to the presence of disputed issues of fact concerning how the Pricing Commitment within that contract should be interpreted. (*Id.* at 7-8.) The appellate court did not discuss—and, thus, did not overrule—the Court's determination that California law governs the interpretation of the Administration Agreement. Moreover, the

case cited by the appellate court in support of its determination that disputed issues of fact remain—*Cachil Dehe Band of Wintun Indians v. California*, 618 F.3d 1066 (9th Cir. 2010)—is a case applying California law. *Id.* at 1073 ("In practical terms, we rely on California contract law . . . ."). This, if anything, was an implicit affirmation of the Court's determination that the Administration Agreement is governed by California law.

Given this backdrop, Maricopa County's attempt to argue that the choice-of-law provisions within the Master Agreement and MICPA are the applicable provisions here, because it had a "direct" contractual relationship with Office Depot under those contracts, necessarily fails. As noted, the Ninth Circuit affirmed the Court's determination that Maricopa County cannot assert contractual claims against Office Depot under the Master Agreement or the MICPA, affirmed the Court's determination that Maricopa County's contractual claims arise only under the Administration Agreement, and implicitly affirmed (or, at a minimum, didn't overrule) the Court's determination that the Administration Agreement is governed by California law. Under the mandate rule, these matters must be "considered as finally settled." *Thrasher*, 483 F.3d at 981 (citation omitted).

Finally, it is true that, in November 2014, the Court rejected Office Depot's argument that "[Maricopa County's] breach of contract claims in Count II are barred by the statute of limitations" because the Court determined that "pursuant to A.R.S. § 12-510, plaintiff is exempt from the statute of limitations." (Doc. 24 at 10-11.) However, the 2014 order did not address the threshold choice-of-law question. (*Id.*) That issue was raised and decided for the first time as part of the summary judgment briefing in 2016. (Doc. 105 at 7.) Moreover, the Court emphasized in its summary judgment order that its prior application of the Arizona statute of limitations did not pertain to the Administration Agreement, the only contract that remained at issue. (*Id.* at 6-7.) In short, the choice-of-law discussion the Ninth Circuit's decision left undisturbed—the message sent by its silence—is that California law governs disputes arising from the Administration Agreement. The Court cannot vary from that mandate.

…

III.  Whether The Administration Agreement's Choice-Of-Law Provision Governs The Statute Of Limitations

Maricopa County next argues that, even assuming "the California choice of law provision in the Administration Agreement controls here . . . [t]his nonetheless leaves open the issue of whether that choice of law extends to the statute of limitations." (Doc. 213 at 3-4.)  According to Maricopa County, the rule in the Ninth Circuit, as established by *Des Brisay v. Goldfield Corp.*, 637 F.2d 680 (9th Cir. 1981), is that unless a contractual choice-of-law provision expressly states that it governs the statute of limitations, the clause should be narrowly construed to govern only "the choice of substantive law." (*Id.*)  In its reply, Office Depot argues that *Des Brisay* is an "outdated authority that applies a now-superseded version of the Restatement" and that subsequent cases, including *Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*, 38 Cal. App. 4th 1532 (1995), confirm that a contractual choice-of-law provision "is operative as to all issues, including the statute of limitations." (Doc. 213 at 2-3.)  In its reply, Maricopa County argues that *Des Brisay* remains binding law and that *Hambrecht* is distinguishable. (Doc. 223 at 6-7.)

As an initial matter, Maricopa County's reliance on *Des Brisay* is misplaced.  There, the plaintiff asserted a "federal securities fraud" claim in federal court.  637 F.2d at 681-82.  Although the forum state (Washington) applied a three-year statute of limitations to securities claims, the plaintiff argued his claim was subject to a longer limitations period because the underlying contract included a clause providing that it "shall be governed and interpreted according to the laws of the [Canadian] province of British Columbia," which applies a six-year limitations period to such claims.  *Id.*  The Ninth Circuit rejected this argument, holding that "the intention of the parties to contractually agree upon a limitations period should be clearly expressed before we consider whether it is permissible to do so *in a federal securities case*." *Id.* at 682 (emphasis added).  Notably, the court did not address whether the statute of limitations applicable to the plaintiff's separate state-law claim for breach of contract should be governed by the law of British Columbia—it simply affirmed the dismissal of that claim for lack of pendent jurisdiction.  *Id.*

- 13 -

Since *Des Brisay* was decided in 1981, multiple courts, including the Ninth Circuit, have recognized that its holding was a narrow one that addresses only when a contractual choice-of-law provision may be used to extend the statute of limitations for a federal claim. *See, e.g., In re Sterba*, 852 F.3d 1175, 1178-79 (9th Cir. 2017); *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1183 (9th Cir. 2009) (rejecting defendants' argument that the choice-of-law provision in the underlying contract "never intended . . . to include the statute of limitations" and holding that *Des Brisay* was inapplicable because it was "a federal securities law case . . . [whereas] this is a diversity action, [so state] law, not federal law, controls"); *In re W. United Nurseries, Inc.*, 2000 WL 34446155, *8 n.8 (D. Ariz. 2000) ("The bankruptcy judge relied on [*Des Brisay*] for the proposition that limitations periods usually are not included in general choice-of-law clauses. However, the *Des Brisay* court was considering the narrow issue of the proper limitations period under federal securities law.").[2] Thus, *Des Brisay* does not control the issue presented here—how to determine the statute of limitations applicable to Maricopa County's state-law claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

To resolve that issue, the Court must apply Arizona's choice-of-law rules. *See, e.g., Patton v. Cox*, 276 F.3d 493 (9th Cir. 2002) ("When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law."). The parties agree that Arizona follows the Restatement (Second) of Conflict of Laws. *See generally Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 202 (Ariz. 1992); *In re W. United Nurseries, Inc.*, 2000 WL 34446155 at *7 ("Arizona has followed the Restatement (Second) of Conflict of Laws in determining choice-of-law issues since its initial publication."). The parties disagree, however, as to which provision of the Restatement

---

[2]  In an unpublished decision, the Ninth Circuit affirmed the district court's choice-of-law analysis. *In re W. United Nurseries, Inc.*, 338 Fed. App'x 706, 708 (9th Cir. 2009) ("In a thorough and accurate ruling, the District Court . . . held that the New York statute of limitations applies, because the Limited Partnership Note and Security Agreement, containing or incorporating New York choice of law provisions, are the relevant contractual documents, and thus control under the analysis required by the Restatement (Second) of Conflict of Laws. We cannot improve on the District Court's discussion. This court has recognized that federal choice of law rules follow the modern version of the Restatement. The district court properly applied New York's statute of limitation.") (citations omitted).

provides the starting point for the analysis—Maricopa County points to Section 142 (Doc. 213 at 4) while Office Depot points to Section 187 (Doc. 208 at 1-2; Doc. 218 at 2-3).

Office Depot has the better side of this argument. Comment c to Section 142 specifically notes that "[t]he validity of a contractual provision limiting the time in which an action may be brought under the contract is determined by the law selected by application of the rules of §§ 187-188." *Id.* Put another way, "where a contract includes a choice of law provision, '[t]he validity of a contractual provision limiting the time in which an action may be brought under the contract is determined by the law selected by application of' Restatement sections 187 and 188, not section 142." *Izquierdo v. Easy Loans Corp.*, 2014 WL 2803285, *3 (D. Nev. 2014). *See also Rindlisbacher v. Steinway & Sons Inc.*, 2019 WL 1932113, *6 (D. Ariz. 2019) ("While Plaintiffs are correct that Arizona applies § 142 to the choice of law analysis where the limitations period is at issue, that analysis is appropriate only if § 187 does not apply."); *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003) ("If a contract includes a specific choice-of-law provision, we must determine whether that choice is 'valid and effective' under Restatement § 187."). The Court will therefore begin with Section 187.

Section 187(1) provides that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." However, comment c to Section 187 further provides that "[w]hether the parties could have determined a particular issue by explicit agreement directed to that issue is a question to be determined by the local law of the state selected by application of the rule of § 188." Thus, "the Court must determine under the factors set forth in Section 188, which state's law would control the instant dispute absent the choice-of-law clause, and whether under that state's law, the parties could validly [alter] the statute of limitations period by contract." *Nexus Solutions Grp., Inc. v. Parametric Tech. Corp.*, 2005 WL 8165550, *7 (D. Idaho 2005).

Section 188(2) identifies five factors that courts must consider when determining

which state has the "most significant relationship to the transaction and the parties": (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. As Office Depot correctly argues in its motion (Doc. 208 at 3-4 & n.5), these factors show that California has the most significant relationship here. Maricopa County's arguments to the contrary (Doc. 213 at 5-7) are based on the mistaken belief that it was Office Depot's contractual counterparty. In fact, the parties to the Administration Agreement were U.S. Communities and Office Depot—Maricopa County is simply a third-party beneficiary and, as discussed in the preceding section, is no longer asserting any direct contractual claims— and Maricopa County doesn't dispute that U.S. Communities is based in California, that the contract became effective upon U.S. Communities' execution of it in California, and that U.S. Communities performed its obligations under the contract in California. (Doc. 209 ¶¶ 2-4; Doc. 214 ¶¶ 2-4.) Moreover, the choice-of-law clause itself states that the Administration Agreement was "executed and delivered within the State of California and [will] be fully performed within the State of California." (Doc. 209-1 at 12.)

Turning back to Section 187(1), the question is thus whether, under California law, it is permissible for parties to alter the statute of limitations by contract. The answer is yes. *Atkins v. Calypso Sys., Inc.*, 2015 WL 5856881, *8-9 (D. Ariz. 2015) ("[T]the parties could have explicitly agreed to apply California's statute of limitations. California law allows such an agreement . . . . Therefore, the parties' contractual choice of law operates to apply California's statute of limitations to Atkins's contract-based claims. Such claims include breach of contract as well as breach of covenant of good faith and fair dealing."). Furthermore, the rule in California is that "a standard choice-of-law provision (which states that a contract shall be governed by the 'laws' of a particular jurisdiction) incorporates the statutes of limitations of the chosen state." *Hambrecht*, 38 Cal. App. 4th at 1536.

Accordingly, the choice-of-law provision in the Administration Agreement requires the application of California law concerning the statute of limitations.

IV.    Applicability Of The Discovery Rule To Third-Party Beneficiaries

California law provides a four-year statute of limitations for both of Maricopa County's remaining claims, breach of contract and breach of the implied covenant of good faith and fair dealing. Cal. Civ. Proc. Code § 337; *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 220 (1991) (noting that "[a]n allegation of breach of the implied covenant of good faith and fair dealing is an allegation of breach of an 'ex contractu' obligation, namely one arising out of the contract itself.").

Office Depot asserts, and Maricopa County does not appear to dispute, that the breach giving rise to the present claim began occurring in 2006. (Doc. 208 at 6-7; Doc. 213 at 13.) The parties entered into a tolling agreement on August 23, 2013. (Doc. 203 at 14.) Thus, for Maricopa County's suit to be timely, some of the actions giving rise to liability must have occurred after August 23, 2009 (four years before entering into the tolling agreement) or the accrual of the cause of action must have been delayed.

Maricopa County relies upon the so-called "discovery rule" to argue that its claims did not accrue until after August 2009. (Doc. 213 at 10-16.) In general, "[t]he discovery rule postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *NBCUniversal Media, LLC v. Super. Ct.*, 225 Cal. App. 4th 1222, 1232 (2014). Under the discovery rule, the cause of action accrues when "the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation." *Graham v. Hansen*, 128 Cal. App. 3d 965, 972 (1982).

Office Depot argues that Maricopa County's reliance on the discovery rule is misplaced for several reasons. The first is a pure legal argument—Office Depot contends that, under California law, the discovery rule cannot be invoked by a third-party beneficiary. (Doc. 208 at 8-10; Doc. 218 at 4.) To support this contention, Office Depot cites two cases. First, in *Skylawn v. Super. Ct.*, 88 Cal. App. 3d 316 (1979), the court addressed whether a third-party beneficiary's cause of action accrued at the time the contract was made or whether the third party had to assent to the contract before the cause

of action could arise. *Id*. at 318. The court held that the cause of action accrued immediately upon execution of the contract and that the plaintiffs' suit was therefore time-barred. *Id*. at 320. Second, in *Sanders v. Am. Cas. Co. of Reading, Pa.*, 269 Cal. App. 2d 306 (1969), the court analyzed whether a contractual provision agreeing to a one-year statute of limitations bound a nonparty plaintiff or whether the plaintiff could avail himself of the longer, default statute of limitations. *Id*. at 308. The court held that the plaintiff was bound by the shorter statute of limitations specified in the contract. *Id*. at 310.

Neither *Skylawn* nor *Sanders* establishes that third-party beneficiaries are categorically barred from invoking the discovery rule in California. Neither case even mentioned the discovery rule. Moreover, the common holding of these cases is that a third party seeking to enforce a contract is bound by the terms of the contract, should be treated no differently than the contracting parties, and need not separately assent to be bound. *Skylawn*, 88 Cal. App. 3d at 319 ("The general rule is that . . . the beneficiary has no rights greater than those of the promisor or promisee."); *Sanders*, 269 Cal. App. 2d at 310 ("When plaintiff seeks to secure benefits under a contract as to which he is a third-party beneficiary, he must take that contract as he finds it."). *See also Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006) (citing *Skylawn* and *Sanders* for the proposition that "[a] third-party beneficiary is subject to the same limitations period as the promisee to the contract that created the rights of the beneficiary"). That holding does not compel the conclusion that the discovery rule is inapplicable to third parties. To the contrary, it suggests that if a party to a contract might be entitled to invoke the discovery rule, a third-party beneficiary should be, too. *Cf. Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 638, 642 (2003) (applying the discovery rule to a breach of warranty claim brought by a third-party warranty beneficiary). Accordingly, Maricopa County, as a third-party beneficiary of the Administration Agreement, is not precluded as a matter of law from using the discovery rule to delay the accrual of the statute of limitations.

…

…

V.    <u>Application Of The Discovery Rule To Maricopa County's Claims</u>

Office Depot next argues that, even if a third-party beneficiary might theoretically be entitled to invoke the discovery rule, Maricopa County cannot prevail on a delayed-accrual claim under the facts of this case. (Doc. 208 at 101-15.) Specifically, Office Depot argues that (1) Maricopa County received actual notice of its potential claim by no later than 2008, when Maricopa County representatives began receiving emails from Mr. Sherwin accusing Office Depot of overcharging on government contracts, and (2) alternatively, Maricopa County "had the opportunity" to discover its claims by 2008 because it could have obtained access to the CCSF contract at that time, conducted an investigation, and learned enough to file suit. (*Id.*) Maricopa County, in contrast, argues that Mr. Sherwin's emails didn't provide sufficient notice because they didn't contain any allegations concerning the CCSF contract, that the CCSF pricing information wasn't available to it in 2008, and that it "had no specific information about potential overcharges to CCSF until the CCSF audit issued in December of 2009." (Doc. 213 at 10-16.) In its reply, Office Depot argues that Maricopa County should not be allowed to "compartmentaliz[e] its suspicion of wrongdoing" to the CCSF contract and that, because Maricopa County generally suspected in 2008 that Office Depot may have breached the Pricing Commitment, it should have filed suit at that time (or, at least, within four years) and then used the discovery process to obtain the facts necessary to establish its claim pertaining to the CCSF contract. (Doc. 218 at 6-8.)

As noted, the discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). "A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." *Id.* "If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." *McCoy v. Gustafson*, 180 Cal. App. 4th 56, 108 (2009). Knowledge of "the specific facts" supporting a claim is

unnecessary; a "suspicion of wrongdoing" is what causes a claim to accrue under the discovery rule. *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988) (quotation marks omitted).

Given these principles, the Court concludes that disputed issues of material fact preclude the entry of summary judgment in either party's favor concerning when Maricopa County's claims accrued.[3]  Although Office Depot has presented an array of evidence establishing that, beginning in 2008, Maricopa County should have suspected (and did suspect) that Office Depot was engaging in *some* form of pricing-related misconduct, the emails from Mr. Sherwin did not contain any allegations concerning the CCSF contract. Instead, the emails alleged that Office Depot was offering lower pricing under certain other contracts, and Office Depot and U.S. Communities responded to Mr. Sherwin's allegations by forcefully and repeatedly declaring that he was wrong.  Reasonable jurors could disagree about whether this state of affairs should have put Maricopa County on notice that an entirely different contract of which Maricopa County was unaware—Office Depot's contract with CCSF, which was apparently one of innumerable contracts Office Depot had with government agencies around the country—actually offered lower pricing.  Reasonable jurors also could disagree about whether the terms of the CCSF contract were simply "the specific facts" Maricopa County needed to establish its suspected claim (in which case the discovery rule would not apply, *see Jolly*, 751 44 Cal. 3d at 1111).  Finally, even if the CCSF contract was theoretically available to Maricopa County upon request in 2008, California courts "have found no case suggesting the existence of public records precludes the application of the delayed discovery doctrine as a matter of law." *Prudential Home Mortgage Co. v. Super. Ct.*, 66 Cal. App. 4th 1236, 1247 (1998).

…

…

…

---

[3]    This conclusion makes it unnecessary to resolve Maricopa County's alternative argument that Office Depot should be equitably estopped from asserting a statute-of-limitations defense.  (Doc. 213 at 16-17.)

Accordingly, **IT IS ORDERED** that:

(1)     Office Depot's motion for summary judgment (Doc. 208) is **denied**; and

(2)     Maricopa County's cross-motion for summary judgment (Doc. 213) is **denied**.

Dated this 13th day of January, 2020.

Dominic W. Lanza
United States District Judge